IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

INERTIALWAVE, INC., *et al.*,            )
                                          )
               Plaintiffs,               )
                                          )
        v.                               )       Civil Action No. 1:22cv1398 (MSN/JFA)
                                          )
SP GLOBAL, INC., *et al.*,                )
                                          )
               Defendants.               )
_____)

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on a motion for default judgment filed by plaintiffs

InertialWave, Inc. and Hikino Associates, LLC d/b/a Intelesense Technologies ("Intelesense")

(collectively "plaintiffs") against defendants SP Global Inc., SPG Institute Inc., Dan Tolley, and

Tom Burns (collectively "defendants"). (Docket no. 16). Pursuant to 28 U.S.C. § 636(b)(1)(C),

the undersigned magistrate judge is filing with the court his proposed findings of fact and

recommendations, a copy of which will be provided to all interested parties.

### Procedural Background

On December 6, 2022, plaintiffs filed a complaint in this action asserting claims for

unjust enrichment, intentional interference with contractual rights, fraud, piercing the corporate

veil/alter ego, conversion, and negligent misrepresentation. (Docket no. 1) ("Compl."). The

Clerk of Court issued summonses for service on defendants on December 19, 2022. (Docket no.

8). On December 23, 2022, plaintiffs filed proof of service that stated SP Global, SPG Institute,

and Burns were served on December 20, 2022, and Tolley was served on December 21, 2022.

(Docket no. 9). In accordance with Federal Rule of Civil Procedure 12(a), responsive pleadings

from SP Global, SPG Institute, and Burns were due on January 10, 2023, while Tolley's

responsive pleading was due on January 11, 2023.  Defendants failed to file any responsive pleading, and the time for doing so has expired.

Plaintiffs requested an entry of default against all defendants on January 31, 2023 (Docket nos. 11–14), which the Clerk of Court entered on February 3, 2023 (Docket no. 15). Plaintiffs filed a motion for default judgment including affidavits in support of the motion on March 16, 2023.  (Docket no. 16).  The undersigned then ordered plaintiffs to notice the hearing, file a certificate of service indicating all pleadings were sent to each defendant, and provide more information concerning the citizenship of certain parties.  (Docket no. 17).  On March 21, 2023, plaintiffs noticed the hearing for April 14, 2023, filed a certificate of service, and provided the information about the citizenship of certain parties.  (Docket nos. 18–20).  On April 5, 2023, the undersigned further ordered plaintiffs to file a supplemental brief providing support and authority for liability for the claims brought in the complaint and addressing the request for attorney's fees. (Docket no. 21).  The hearing was then continued to May 5, 2023 (Docket no. 26), and plaintiffs filed their supplemental memorandum on April 28, 2023 (Docket no. 29).  On May 5, 2023, the motion was called in open court, and plaintiffs' counsel appeared before the undersigned.  Tolley appeared on behalf of himself, while no one appeared on behalf of the other defendants.  The motion for default judgment was taken under advisement, and plaintiffs were requested to file an additional brief addressing issues discussed with counsel at the hearing.  (Docket no. 32).  Even though Tolley appeared at the hearing on May 5, 2023, he has not filed any response to plaintiffs' motion.  Plaintiffs filed a second supplemental brief on May 24, 2023, and mailed a copy of the brief to defendants.  (Docket no. 33).

**Factual Background**

The following facts are established by the complaint and attached exhibits, along with the briefs filed in support of the motion for default judgment. (Compl.; Docket nos. 1-2–1-5; 20; 29; 33). Plaintiff InertialWave is a California corporation with its principal place of business in California. (Compl. ¶ 1). Plaintiff Intelesense is a limited liability corporation whose sole member is a citizen of California. (Compl. ¶ 2; Docket no. 20 ¶ 2).

Defendants SP Global and SPG Institute are Virginia corporations and have their principal place of business in Virginia. (Compl. ¶¶ 3–4; Docket no. 20 ¶ 1). SPG Institute is a nonstock corporation registered as a 501(c)(3) organization. (Compl. ¶¶ 13, 65; Docket no. 33 at 6). Defendant Tolley, a citizen of Virginia, is the President and Chief Technology Officer (CTO) of SP Global and Vice President and Treasurer of SPG Institute. (Compl. ¶¶ 5–7). According to SPG Institute's 2019 IRS Form 990, it paid Tolley $345,000 of reportable income.[1] (Compl. ¶ 61). Defendant Burns, also a citizen of Virginia, is the CEO of SP Global and President and a Director of SPG Institute. (Compl. ¶¶ 8–10).

**ARCNet Project Award**

In or around February 2019, the United States Air Force (USAF) awarded SPG Institute a $195 million contract to design, develop, and provide technical support associated with cloud-based technology in support of artificial intelligence advancement sought by USAF on a platform called the ARCNet Consortium. (Compl. ¶ 14). Upon receiving this award from USAF, SPG Institute subcontracted with numerous businesses, including plaintiffs. (Compl. ¶ 15).

---

[1] SPG Institute failed to file an IRS Form 990 for tax years 2020 and 2021. (Compl. ¶ 62).

3

**InertialWave Agreement and Non-Payment**

Plaintiffs allege SPG Institute and InertialWave entered into a Cooperative Agreement Subaward ("InertialWave Agreement") on June 30, 2020, whereby SPG Institute agreed to compensate InertialWave a total sum of $719,475.85 for InertialWave's services under the contract. (Compl. ¶¶ 16–17; Docket no. 1-2). The InertialWave Agreement called for InertialWave to "perform and deliver a physical design of their MicroElectronics challenge project." (Compl. ¶ 20). Plaintiffs assert InertialWave fully performed its obligations under the agreement, and SPG Institute accepted the services rendered and never identified any deficiencies in InertialWave's services. (Compl. ¶¶ 21–22). InertialWave provided SPG Institute an invoice on a monthly basis for actual costs incurred. (Compl. ¶ 24). Under the InertialWave Agreement, SPG Institute was to pay invoices within fifteen (15) days from the receipt of the invoice. (Compl. ¶ 25). From October 2020 to January 2021, InertialWave submitted five invoices in the total amount of $661,192.11. (Compl. ¶¶ 26, 35).

After sending each invoice, plaintiffs allege InertialWave repeatedly asked defendants for updates on the status of payments. (Compl. ¶ 36). On December 15, 2020, InertialWave emailed Tolley and SPG Institute about the status of past due invoices. (Compl. ¶ 37). Tolley blamed the delay on problems with SP Global's accounting system but promised that InertialWave would be paid the following week. (Compl. ¶ 38). However, plaintiffs assert InertialWave was never paid as promised. (Compl. ¶ 39). After InertialWave repeatedly followed up, Tolley responded on December 29, 2020 that the wires were being sent that week, but InertialWave never received any form of payment. (Compl. ¶¶ 40–41). Plaintiffs claim InertialWave has still never received any form of payment for services rendered under the InertialWave Agreement, and InertialWave's outstanding unpaid invoices total $661,192.11 plus

all reasonable costs, expenses, and liabilities incurred in connection with each claim.  (Compl. ¶¶ 42–43).

**Intelesense Agreement and Non-Payment**

Similarly, plaintiffs allege SPG Institute and Intelesense entered into a Cooperative Agreement Subaward ("Intelesense Agreement") with an effective date of June 30, 2020, whereby SPG Institute agreed to compensate Intelesense a total sum of $1,959,999.70 for Intelesense's services under the contract.  (Comp.. ¶ 18; Docket no. 1-3).  Under this agreement, Intelesense was to manage the development of advanced microelectronics for the ARCNet prototype.  (Compl. ¶ 28).  Similar to InertialWave, plaintiffs contend Intelesense fully performed its obligations, SPG Institute accepted the services and never identified any deficiencies, Intelesense provided invoices on a monthly basis, and SPG Institute was required to pay the invoices within fifteen (15) days of receipt.  (Compl. ¶¶ 29–30, 32–33).  From July 2020 to December 2020, Intelesense submitted six invoices in the total amount of $1,959,999.70.  (Compl. ¶ 34).  Intelesense received payment for its July 2020 and August 2020 invoices, which totals to $836,848.56 paid.  (Compl. ¶ 46).

Plaintiffs claim Intelesense repeatedly inquired about the status of the unpaid invoices, and Tolley and/or other defendants repeatedly reassured Intelesense that it would be paid.  (Compl. ¶ 44).  On October 30, 2020, Intelesense received notice that the Air Force Research Labs did not have the funding to continue the next phase of development of the ARCNet project past November 30, 2020.  (Compl. ¶ 47).  An employee of SP Global told Intelesense that Intelesense could continue to expend funds on the project until the end of November.  (Compl. ¶ 48).  Intelesense continued to ask Tolley about the unpaid invoices, but Tolley failed to respond for over a month and then promised in early December 2020 that wires were being sent the

following week. (Compl. ¶¶ 49–55). Later in December 2020, Tolley blamed problems with their accounting system. (Compl. ¶ 57). Intelesense never received payment for its four remaining unpaid invoices. (Compl. ¶ 46).

**SPG Institute's Relationship with Other Defendants**

Plaintiffs allege SPG Institute is owned and controlled by SP Global, Tolley, and Burns. (Compl. ¶¶ 60, 63). When Tolley sent emails to plaintiffs concerning payments from SPG Institute, plaintiffs claim he used his SP Global email address with a signature block identifying himself as President of SP Global. (Compl. ¶ 68). Furthermore, SP Global and SPG Institute's funds were co-mingled. (Compl. ¶ 64).

Throughout the project, SPG Institute received at least $11 million in federal funds from USAF. (Compl. ¶ 65). SPG Institute submitted numerous vouchers throughout 2019 and 2020 to USAF to support its request for funds. (Compl. ¶¶ 72–73). Shortly after each voucher was submitted, SPG Institute received the requested monies from USAF by direct deposit for the purpose of, among others, paying plaintiffs and other subcontractors for services performed. (Compl. ¶¶ 74–75).

Despite receiving that money from USAF, plaintiffs assert SPG Institute still owes millions to numerous contractors including plaintiffs. (Compl. ¶ 66). While SPG Institute and/or SP Global paid some of the subcontractors, they began using the funds received from USAF for other purposes, including paying SP Global's debts, salaries, and obligations. (Compl. ¶ 69). Over time, Tolley caused and allowed SPG Institute to transfer millions of dollars in federal funds into SP Global accounts and used that money to benefit defendants, not the federal government or subcontractors who had performed valuable services to support the project. (Compl. ¶ 70). Burns also directed, ordered, and otherwise took steps to transfer funds from

SPG Institute bank accounts to SP Global bank accounts to pay SP Global's operating costs and expenses, even though Burns was aware of the agreements and payment obligations between SPG Institute and plaintiffs and that transfer of said monies would result in SPG Institute being left unable to fulfill its contractual obligations to plaintiffs and other third-parties. (Compl. ¶¶ 76–79).

**Arbitration**

On August 4, 2021, an arbitrator issued a final arbitration award against SPG Institute in favor of InertialWave for the total amount of $704,190.26. (Compl. ¶ 80; Docket no. 1-4). That award consists of $661,192.11 for the balance due under the InertialWave Agreement; $16,998.15 for pre-judgment interest; $16,500 for attorneys' fee; and $9,500 in arbitration costs as provided for in the InertialWave Agreement. *Id.* This arbitration award was confirmed by the Court of Common Pleas in Montgomery County, Ohio. (Compl. ¶ 81).

In a separate arbitration, an arbitrator issued a final award on June 25, 2021 against SPG Institute in favor of Intelesense in the total amount of $1,155,981.64. (Compl. ¶ 83; Docket no. 1-5). The award is broken down into $1,123,151.14 for the balance due under the Intelesense Agreement; $20,330.50 for attorneys' fees; and $12,500 for arbitration costs. *Id.* On October 22, 2021, the Court of Common Pleas in Montgomery County, Ohio confirmed the arbitration award. (Compl. ¶ 84). Plaintiffs claim SPG Institute has not satisfied either judgment, and SPG Institute does not have funds to satisfy plaintiffs' judgments against it. (Compl. ¶¶ 82, 85, 86).

## Proposed Findings and Recommendations

Federal Rule of Civil Procedure 55(a) authorizes the entry of a default when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Based on the failure of defendants to file responsive pleadings in a timely manner, the Clerk of Court has entered a default as to defendants. (Docket no. 15).

A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantage.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Federal Rule of Civil Procedure 55(b)(2) provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.

## Joinder

As an initial matter, this proposed findings of fact and recommendations will address whether the two plaintiffs are joined properly as plaintiffs in this action. Federal Rule of Civil Procedure 20(a)(1) directs that multiple persons may join in one action as plaintiffs if "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." The Supreme Court has generally encouraged joinder of claims, parties, and remedies in order to "entertain[] the broadest possible scope of action consistent with fairness to the parties." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

To satisfy the transaction or occurrence test under Rule 20(a)(1), there must be a logical relationship between the events giving rise to the cause of action against each defendant. While plaintiffs do bring claims against the same defendants that derive from agreements that dealt with the ARCNet project, the two agreements are separate and distinct contracts, and plaintiffs do not assert relief jointly, severally, or arising out of the same transaction, occurrence, or series of transactions or occurrences.

Despite the requirements of Federal Rule of Civil Procedure 20(a)(1) not being satisfied, the court has discretion to act *sua sponte* to, "on just terms, add or drop a party." Fed. R. Civ P. 21. Previously, this court has found that any defects to joinder may be disregarded when the joinder does not affect any party's substantial rights. *See Coach, Inc. v. 1941 Coachoutletstore.com*, 2012 WL 27918, at *4 (E.D. Va. Jan. 5, 2012) ("And, there is no prejudice to any defaulting defendant, whose liability may be established upon default irrespective of the presence of any other defendant. As a result, the Court finds that it must disregard any potential defects related to joinder, as they do not affect any party's substantial rights, and the Court's correction of those defects under Rule 21 would not be on just terms.") (internal citation and quotation marks omitted). Here, the defaulting defendants are not prejudiced by the joinder, as their liability to both plaintiffs are established by their own default. As such, joinder does not affect any of defendants' substantive rights.

For this reason, the undersigned recommends a finding that joinder of the two plaintiffs is appropriate.

## Jurisdiction and Venue

A court must have subject matter jurisdiction over a claim, personal jurisdiction over a defaulting party, and venue must be proper before it can render a default judgment. Diversity jurisdiction exists when the controversy is between citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Here, plaintiffs are citizens of California. (Compl. ¶¶ 1–2; Docket no. 20 ¶ 2); *see also Gen. Tech. Applications, Inc. v. Exro, Ltda.*, 388 F.3d 114, 121 (4th Cir. 2004) (noting that the citizenship of an LLC is that of its members for purposes of establishing diversity). Defendants are citizens of Virginia. (Compl. ¶¶ 3–5, 8; Docket no. 20 ¶ 1). The amount in controversy exceeds $75,000, as plaintiffs are seeking damages in excess of $704,190.26 for InertialWave and $1,155,981.64 for Intelesense. (Compl. ¶¶ 137–38).

This court also has personal jurisdiction over defendants. As stated in the complaint, defendants are residents of Virginia. (Compl. ¶ 3–5, 8). As defendants are "at home" in the forum, there is general personal jurisdiction. *See Symbology Innovations, LLC v. Lego Systems, Inc.*, 282 F. Supp. 3d 916, 936 (E.D. Va. 2017) (noting that general personal jurisdiction exists where a defendant has affiliations with the state that are so "continuous and systematic" as to render defendant essentially at home in the state, such as a corporation's place of incorporation or principal place of business).

Venue is proper in this court pursuant to 28 U.S.C. § 1391. Under 28 U.S.C. § 1391(b)(1), venue is proper in any district in which any defendant resides if all defendants are residents of the state in which the district is located. Defendants all reside in this district. (Compl. ¶¶ 3–5, 8); *see* 28 U.S.C. § 1391(c). While the forum selection clause requires cases to be brought in the federal or state courts encompassing Montgomery County, Ohio (Docket nos.

1-2 § 20(c); 1-3 § 20(c)), a defaulting defendant waives the defense of improper venue in accordance with a forum selection clause. *See LG Capital Funding, LLC v. M Line Holdings, Inc.*, 422 F. Supp. 3d 739, 754 (E.D.N.Y. 2018); *Williams v. Lakin*, 2008 WL 1990473, at *2 (N.D. Okla. May 2, 2008).

For these reasons, the undersigned recommends a finding that this court has subject matter jurisdiction over this action, that this court has personal jurisdiction over defendants, and that venue is proper in this court.

<u>**Service**</u>

Pursuant to Federal Rule of Civil Procedure 4(e)(2)(a), service on an individual may be accomplished by the delivery of a copy of the summons and complaint to the individual personally. Federal Rule of Civil Procedure 4(h)(1)(B) allows for service on a corporation or an unincorporated association by the delivery of a copy of the summons and complaint to an officer, a managing or general agent, or any other agent authorized by appointment or law to receive service of process.

On December 20, 2022, Abel Emiru, a private process server, served SP Global, SPG Institute, and Burns by personally serving Burns, as an individual and officer of SP Global and SPG Institute, with the summons, notice, and complaint. (Docket no. 9 at 2–4). Sanders Bayer, a private process server, personally served Tolley on December 21, 2022. (Docket no. 9 at 1). Additionally, Tolley appearing at the hearing on May 5, 2023 demonstrates he had notice of this action. Based on the foregoing, the undersigned recommends a finding that defendants were properly served with the summonses and complaint and had notice of this action.

## **Grounds for Entry of Default**

On January 31, 2023, plaintiffs requested an entry of default as to defendants.  (Docket

nos. 11–14).  On February 3, 2023, the Clerk of Court entered default as to defendants for failure

to plead or otherwise defend.  (Docket no. 15).

On March 16, 2023, plaintiffs filed a motion for default judgment and attached affidavits.

(Docket no. 16).  Following orders from the undersigned, plaintiffs served defendants with the

motion for default judgment, notice of hearing, and supplemental briefings.  (Docket nos. 18; 19

at 3; 29 at 13; 33 at 9).  At the hearing on May 5, 2023, Tolley appeared to represent himself.

Nonetheless, no responsive pleadings have been filed, and the time for doing so has expired.

Accordingly, the undersigned recommends a finding that defendants were properly

served, they failed to file responsive pleadings in a timely manner, the Clerk of Court entered

default as to defendants, and that defendants had notice of these proceedings.

## **Liability**

According to Federal Rule of Civil Procedure 54(c), a default judgment "must not differ

in kind from, or exceed in amount, what is demanded in the pleadings."  Given that a default has

been entered, the factual allegations in the complaint are deemed admitted.  *See* Fed. R. Civ. P.

8(b)(6).  As set forth in the complaint, plaintiffs bring claims against defendants for unjust

enrichment, intentional interference with contractual rights, fraud, piercing the corporate

veil/alter ego, conversion, and negligent misrepresentation.

**Choice of Law**

Plaintiffs assert that Virginia law should govern its claims under the principles of *lex loci*

*delicti*.  (Docket no. 29 at 6).  Before the application of *lex loci delicti* can be reached, the

undersigned must address both the choice-of-law clauses in the InertialWave Agreement and

Intelesense Agreement and the choice-of-law approach for piercing the corporate veil.  Both

agreements state that the agreements "will be governed by the laws of the State of Ohio."

(Docket nos. 1-2 § 20(c); 1-3 § 20(c)).  Still, Virginia law will be used to determine the scope of

the choice-of-law provisions in the agreements.  *See Pyott-Boone Electronics Inc. v. IRR Trust*

*for Donald L. Fetterolf Dated December 9, 1997*, 918 F. Supp. 2d 532, 543 (W.D. Va. 2013)

("The Virginia Supreme Court, therefore, would be likely to apply the law of Virginia in

determining the scope of a choice-of-law provision.").

As an initial matter, courts have typically treated alter ego liability differently than other

claims.  The Restatement of Conflict of Laws calls for the local law of the state of incorporation

to be applied to determine whether the corporate veil may be pierced.  RESTATEMENT (SECOND)

OF CONFLICT OF LAWS § 307.  Virginia choice-of-law rules are consistent with the Restatement.

*See United States v. Kolon Indus., Inc.*, 926 F. Supp. 2d 794, 814–15 (E.D. Va. 2013); *McCarthy*

*v. Giron*, 2014 WL 2696660, at *11 (E.D. Va. June 6, 2014) (citing *Guest Serv. Co. v. Delia*

*Ratta*, 1991 WL 835131, at *4 (Va. Cir. Aug. 14, 1991)).  However, it does not appear that

Virginia courts have determined the applicability of this approach when there is a choice-of-law

provision in a contract that designates the governing law as different from the state of

incorporation.

Looking at the approach taken by other courts, the majority view is that the Restatement

approach still applies even when there is conflict with a choice-of-law clause in the contract.  *See*

*Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) ("The choice of law

provisions in the debentures are irrelevant.  The issue is the limited liability of shareholders of a

corporation—not Circle K's obligations under the debentures."); *Wehlage v. EmpRes Healthcare*

*Inc.*, 821 F. Supp. 2d 1122, 1126–29 (N.D. Cal. 2011) (applying Washington law to an alter ego

claim against an LLC organized under Washington law despite a choice-of-law provision indicating California law should apply); *United Trade Ass'n Ltd. v. Dickens & Matson (USA) Ltd., Inc.*, 848 F. Supp. 751, 759 (E.D. Mich. 1994) ("Although the choice of law clause directs this Court to interpret the contractual dispute under English law, the issue of piercing the corporate veil is collateral to the contract, and thus this Court is not bound by the choice of law provision."). As the Second Circuit explained, "[b]ecause a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away." *Kalb, Voorhis & Co.*, 8 F.3d at 132 (quoting *Soviet Pan Am. Travel Effort v. Travel Comm., Inc.*, 756 F. Supp. 126, 131 (S.D.N.Y. 1991)) (quotation marks omitted). In keeping with this approach, the undersigned recommends the application of Virginia law to the alter ego claim, as SP Global and SPG Institute are incorporated under the laws of Virginia. (Docket no. 20 ¶ 1).

The next issue is whether plaintiffs' other claims fall within the scope of the choice-of-law provisions in the agreements. "Where a choice of law clause in the contract is sufficiently broad to encompass contract-related tort claims . . . , other courts have honored the intent of the parties to choose the applicable law." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999). As the "true test for the determination of the proper law of a contract is the intent of the parties," the undersigned must examine the language of the contract to ascertain the parties' intent. *Run Them Sweet, LLC v. CPA Global Ltd.*, 224 F. Supp. 3d 462, 466 (E.D. Va. 2016) (quoting *Tate v. Hain*, 181 Va. 402, 410 (1943); citing *W.F. Magann Corp. v. Virginia-Carolina Elec. Works, Inc.*, 203 Va. 259, 264 (1962)).

This court has addressed the applicability of a choice-of-law provision on tort claims on numerous occasions. In some cases, the court has read similar choice-of-law clauses as the one

in the agreements broadly to determine that contract-related torts are subject to the provision.
*See id.* at 466–67 (holding that the parties intended for Virginia law to apply to tort and unjust
enrichment claims related to the agreement where the agreement contained a provision that the
contract "shall be governed by and construed in accordance with the laws of the Commonwealth
of Virginia"); *Freedman v. Am. Online, Inc.*, 325 F. Supp. 2d 638, 653–54 (E.D. Va. 2004)
(finding that Virginia substantive law applies for claims brought under the Electronic
Communication Privacy Act and Connecticut Unfair Trade Practices Act because the parties'
dispute arose from the member agreement, which had a choice-of-law provision that stated that
"the laws of the Commonwealth of Virginia, excluding the conflicts-of-law rules, govern this
Agreement and your membership").  On the other hand, there are several cases where the court
has found that tort claims have not fallen within the scope of choice-of-law clauses. *See In re*
*Capital One Consumer Data Security Breach Litigation*, 488 F. Supp. 3d 374, 391–93 (E.D. Va.
2020) (finding that the clause that stated "[t]his Agreement is governed by . . . Virginia law"
could not be reasonably construed to apply Virginia substantive law for contract-related torts);
*Self Insured Servs. Co. v. Panel Sys., Inc.*, 352 F. Supp. 3d 540, 551–52 (E.D. Va. 2018) (reading
the choice-of-law provision narrowly where it provides that Iowa law "will be controlling in all
matters relating to the interpretation and validity of th[ese] Agreement[s] unless pre-empted by
federal law" because the clause specifically narrows the application to issues related to contract
interpretation and validity); *Sanchez v. Lasership, Inc.*, 2012 WL 3730636, at *4–8 (E.D. Va.
Aug. 27, 2012) (holding that the choice-of-law provision did not apply to claims for
misclassification of independent contractors or violations of wage laws under Massachusetts
statute where the provision provided the contract "be construed according to the laws of the
United States and of the Commonwealth of Virginia").

15

In *In re Capital One*, this court noted the tension between the decision and *Run Them Sweet*, but it explicitly distinguished the two cases. 488 F. Supp. 3d at 393 n.8.  Specifically, the court noted that the presence of the forum selection clause, in combination with the choice-of-law provision, counseled for a broader reading of the choice-of-law provision in *Run Them Sweet* than in the *In re Capital One* case, where the relevant provision did not contain a forum selection clause. *Id.*  The court found that this combination "manifests the intent to reduce uncertainty and proceed in one forum under one body of law." *Id.* (quoting *Run Them Sweet*, 224 F. Supp. 3d at 467).

In assessing the case at hand, the agreements are more similar to *Run Them Sweet* than *In re Capital One*, even though the language of the clauses are relatively identical.  The difference here is that the InertialWave Agreement and Intelesense Agreement include other provisions that evidence the intent of the parties to have the agreements be governed by Ohio law.  The agreements include a forum selection clause that places the venue in the appropriate federal or state courts encompassing Montgomery County, Ohio. [2]  (Docket nos. 1-2 § 20(c); 1-3 § 20(c)).  The agreements also dictate that arbitrations for disputes arising under the agreements would be settled by an arbitrator in Montgomery County, Ohio, and the arbitration itself would take place in Montgomery County, Ohio. (Docket nos. 1-2 § 13(b); 1-3 § 13(b)).  As discussed above, the arbitrations with SPG Institute did proceed in Ohio, and the judgments have been entered by an Ohio court. (Compl. ¶¶ 80–84).  Therefore, the tort and unjust enrichment claims do fall within the scope of the choice-of-law provisions in the InertialWave and Intelesense Agreements.

---

[2] While, as noted above, the forum selection clause has been waived due to defendants' default, whether the claims actually proceed in the forum under that forum's body of law is not relevant to the considerations here.  Instead, the relevance is the intent of the parties to have any dispute proceed in a forum under that forum's body of law when forming the contract.

Accordingly, the undersigned will apply Virginia law for the alter ego claim and Ohio law for interpreting the contract and evaluating the other claims brought by plaintiffs.

**Piercing Corporate Veil/Alter Ego**

Plaintiffs bring a claim alleging that SP Global, Burns, and Tolley should be responsible for the damages awarded against SPG Institute under the theory of piercing the corporate veil/alter ego. (Compl. ¶¶ 109–22). Virginia courts have consistently held that "a corporation is a legal entity entirely separate and distinct from the shareholders or members who compose it." *Cheatle v. Rudd's Swimming Pool Supply Co., Inc.*, 234 Va. 207, 212 (1987). A decision to pierce the corporate veil "constitutes 'an extraordinary exception' to be permitted only when it becomes necessary to promote justice." *Id.* (citing *Beale v. Kappa Alpha Order*, 192 Va. 382, 397 (1951)). "There is no single rule or criterion that can be applied to determine whether piercing the corporate veil is justified." *O'Hazza v. Exec. Credit Corp.*, 246 Va. 111, 115 (1993). As the party seeking to pierce the corporate veil bears the burden of proof, "plaintiff must show that the corporate entity was the *alter ego*, alias, stooge, or dummy of the individuals sought to be charged personally and that the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime." *Cheatle*, 234 Va. at 212 (citing *Lewis Trucking Corp. v. Commonwealth*, 207 Va. 23, 31 (1966)). This burden can be carried by showing "(i) 'a unity of interest and ownership' between [the corporation and other defendants] and (ii) that [the other defendants] 'used the corporation to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage.'" *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 306 F.3d 126, 131–32 (4th Cir. 2002) (quoting *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 140 F. Supp. 2d 628, 643 (E.D. Va. 2001)).

However, Virginia cases deal with piercing the corporate veil for for-profit corporations and partnerships. SPG Institute is registered as a 501(c)(3) not-for-profit corporation, and it has no shareholders as a nonstock corporation. (Compl. ¶¶ 13, 65; Docket no. 33 at 6). However, the doctrine of piercing the corporate veil is found in equity and exists to prevent injustice. *Steyhr Daimler Puch of Am. Corp. v. Pappas*, 35 B.R. 1001, 1004 (E.D. Va. 1983) (quoting *Aetna Cas. & Surety Co. v. Stover*, 327 F.2d 288, 291 (8th Cir. 1964)). "The mere fact that a corporation is a nonprofit corporation does not by itself preclude the court from applying the equitable remedy of piercing the corporate veil." 1 FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 41.75 (2022). Justice would not be served if the court were to allow one who uses a non-profit corporation as an alter ego to avoid recovery against it simply due to the status of the non-profit corporation and lack of shareholders. This conclusion is supported in numerous other jurisdictions. *See HOK Sport, Inc. v. FC Des Moines, L.C.*, 495 F.3d 927, 938–39 (8th Cir. 2007); *Loving Saviour Church v. United States*, 556 F. Supp. 688, 691 (D.S.D. 1983), *aff'd* 728 F.2d 1085, 1086 (8th Cir. 1984); *United States v. Emor*, 850 F. Supp. 2d 176, 206 (D.D.C. 2012); *Taverns for Tots, Inc. v. City of Toledo*, 307 F. Supp. 2d 933, 941 (N.D. Ohio 2004); *United States ex rel. Wright v. Cleo Wallace Ctrs.*, 132 F. Supp. 2d 913, 929 (D. Colo. 2000); *United States v. Kitsos*, 770 F. Supp. 1230, 1236–37 (N.D. Ill. 1991); *Pub. Interest Bounty Hunters v. Bd. of Fed. Reserve Sys.*, 548 F. Supp. 157, 162 (N.D. Ga. 1982); *Medlock v. Medlock*, 263 Neb. 666, 679–80 (2002); *Barineau v. Barineau*, 662 So.2d 1008, 1009 (Fla. Dist. Ct. App. 1995). Therefore, SPG Institute's status as a nonstock corporation does not preclude its corporate veil from being pierced.

First, plaintiffs must prove a unity of interest between SPG Institute and the other defendants. Among the factors the court should consider in the unity of interest analysis is (i) the

comingling of personal and corporate funds, (ii) the siphoning business assets into personal

pockets, (iii) the undercapitalization of the business, and (iv) whether business formalities were

observed. *C.F. Trust*, 140 F. Supp. 2d at 643 (citing *Cheatle*, 234 Va. at 212). Here, all four

factors favor a finding of unity of interest.

There was a significant amount of comingling of funds between SPG Institute and other

defendants and siphoning of business assets into defendants' accounts. Even though plaintiffs'

contracts were with SPG Institute, messages from employees and Tolley to plaintiffs indicate

that the transfer of funds would come from SP Global. (Compl. ¶¶ 16, 18, 38, 48–50). Burns

directed the transfer of funds from SPG Institute bank accounts to SP Global bank accounts.

(Compl. ¶ 76). Tolley also used SP Global's accounting system issues as an excuse for not

paying plaintiffs, which indicates that funds that were originally sent to SPG Institute by the

USAF were subsequently moved to SP Global. (Compl. ¶¶ 38–39, 57). Instead of paying

subcontractors with the money received from the USAF, SP Global, Tolley, and Burns retained

the money and used it to enrich themselves. (Compl. ¶ 94).

Furthermore, SPG Institute was undercapitalized and business formalities were not

observed. Undercapitalization need not be in place throughout the entire relevant period, as a

transfer of funds can result in the undercapitalization of a corporation. *See DiMuroGinsberg,*

*P.C. v. VLOX, LLC*, 2019 WL 3728254, at *9 (E.D. Va. Aug. 7, 2019) ("Wardak transferred $2

million from the Base Year settlement from VLOX to himself without paying any consideration

and was aware that this transfer would result in VLOX's undercapitalization and lack of funds to

pay its then-creditors."). While there may have been times during the relevant period that SPG

Institute was appropriately capitalized, the transfer of funds to SP Global for it to use these funds

on its debts, salaries, and obligations resulted in the undercapitalization of SPG Institute.

19

(Compl. ¶¶ 69–70, 78–79).  As a result, SPG Institute does not have funds to satisfy plaintiffs' judgments against it.  (Compl. ¶ 86).  The lack of observation of corporate formalities is evidenced by SPG Institute freely transferring money to SP Global, SP Global being responsible for paying SPG Institute's creditors, Tolley and Burns seemingly acting on behalf of both SPG Institute and SP Global at the same time, and the failure to file proper IRS forms.  (Compl. ¶¶ 38, 48, 50, 62, 68, 70, 76–79).

Second, plaintiffs must prove that defendant used SPG Institute to perpetrate fraud, commit an injustice, or to gain an unfair advantage.  SPG Institute received millions of dollars that came in from the USAF for the ARCNet project, transferred a significant portion of the money to SP Global in an attempt to evade its obligations to the subcontractors including plaintiffs, and SP Global used those funds to benefit defendants.  (Compl. ¶¶ 65–66, 70).  These actions are sufficient to satisfy this prong of the analysis.  *See C.F. Trust*, 140 F. Supp. 2d at 644 ("Given this control and unity of interest with First Flight, Barrie Peterson was able to evade his obligation to his creditors by directing the transfer of millions of dollars out of First Flight to Scott Peterson and to BHG for the payment of his personal expenses.").

Accordingly, the undersigned recommends a finding that plaintiffs can pierce the corporate veil of SPG Institute and hold Tolley, Burns, and SP Global liable for judgments against SPG Institute.[3]

---

[3] Given this recommendation, the undersigned need not address liability for the other claims.

## Relief

Plaintiffs are seeking damages arising from the contractual relationship and attorneys'

fees from defendants. (Docket no. 29 at 5, 11–12).[4]  Unlike liability, allegations concerning

damages are not admitted upon default.  *See* Fed. R. Civ. P. 8(b)(6); *Greyhound Exhibitgroup,*

*Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).  Instead, the court "must make

an independent determination regarding damages."  *Wilcox v. Transmodal Solutions, LLC*, 473

F. Supp. 3d 574, 584 (E.D. Va. 2020) (citation and quotation marks omitted).

**Damages**

On August 4, 2021, an arbitrator issued the final arbitration award against SPG Institute

in favor of InertialWave, which was confirmed by the Court of Common Pleas in Montgomery

County, Ohio on August 31, 2021, for: (1) $661,192.11 in the amount unpaid to InertialWave;

(2) $16,998.15 in prejudgment interest through the date of the arbitration award; (3) $16,500.00

in attorneys' fees as provided by the agreement; and (4) $9,500.00 in InertialWave's arbitration

costs as provided by the agreement.  (Compl. ¶¶ 80–81).  On June 25, 2021, a separate arbitrator

issued the final arbitration award against SPG Institute in favor of Intelesense, which was

confirmed by the Court of Common Pleas in Montgomery County, Ohio on October 22, 2021,

for: (1) $1,123,151.14 in the amount unpaid to Intelesense; (2) $20,330.50 in attorneys' fees; and

(3) $12,500 in arbitration costs.  (Compl. ¶¶ 83–84).  With SPG Institute having been found to be

---

[4] Plaintiffs note they did not include "additional interest, fees, and costs incurred as a result of Burns, Tolley, and SP Global's continued interference of the arbitration award to the filing of the Complaint." (Docket no. 29 at 5).  Plaintiffs do not address the claim for interest in any other fashion in their motion for default judgment or the supplemental briefings. Accordingly, despite listing pre-judgment and post-judgment interest in the complaint (Compl. Prayer for Relief ¶ d), it does not appear that plaintiffs are requesting additional pre-judgment interest as part of their judgment against defendants.

the alter ego of the other defendants, the undersigned recommends Tolley, Burns, and SP Global be held jointly and severally liable for the judgments against SPG Institute.[5]

**Attorneys' Fees**

Plaintiffs also seek attorneys' fees and costs from this action.  Based on the affidavits and billing information provided by plaintiffs, plaintiffs are requesting $17,999.38 in attorneys' fees and $402.00 in costs.  (Docket nos. 29-1–29-5).

Under the "American rule," "a prevailing party in a civil action may not recover attorney fees as part of the costs of litigation." *Cruz v. English Nanny & Governess School*, 169 Ohio St.3d 716, 724, 2022-Ohio-3586, ¶ 35 (quoting *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 548, 2009-Ohio-306, ¶ 7) (quotation marks omitted).  The Ohio Supreme Court has recognized an exception to this general rule, in that parties may contract to shift the fees. *Id.* ¶ 36 (citing *Wilborn*, 121 Ohio St.3d at 548, at ¶ 7).

Under the agreements, the prevailing party in any dispute between the parties is entitled to receive all reasonable costs incurred, including any attorneys' fees and court fees.  (Docket nos. 1-2 § 13(c); 1-3 § 13(c)).  The language of this clause is sufficiently broad to encompass a dispute claiming that one defendant is the alter ego of the other defendants. *See Lewis v. DR Sawmill Sales, Inc.*, 2006-Ohio-1297, ¶ 25 (affirming the trial court's decision to award attorneys' fees jointly and severally against both defendants after holding that the corporate veil may be pierced).

In calculating attorneys' fees, a court "first multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Calypso Asset Mgmt., LLC v. 180*

---

[5] While plaintiffs also seek a judgment against SPG Institute in the complaint, plaintiffs already have judgments against SPG Institute from the arbitration.  Any award against SPG Institute would be duplicating that arbitration award.

*Industrial, LLC*, 2019-Ohio-2, ¶ 28.  The court "may then modify that amount by application of

the reasonableness factors listed in Prof. Cond. R. 1.5(a)."  *Id.*  Those factors include:

> (1) the time and labor required, the novelty and difficulty of the questions
> involved, and the skill requisite to perform the legal service properly; (2) the
> likelihood, if apparent to the client, that the acceptance of the particular
> employment will preclude other employment by the lawyer; (3) the fee
> customarily charged in the locality for similar legal services; (4) the amount
> involved and results obtained; (5) the time limitations imposed by the client or by
> the circumstances; (6) the nature and length of the professional relationship with
> the client; (7) the experience, reputation, and ability of the lawyer performing the
> services; [and] (8) whether the fee is fixed or contingent.

*Id.* (quoting Ohio R. Prof. Cond. 1.5(a)(1)–(8)).

Having reviewed plaintiffs' request for attorneys' fees and costs as provided (Docket nos.

29-1–29-5), as well as the declaration provided by Bernard J. Dimuro (Docket no. 29-6), and

having considered the factors laid out in *Calypso*, the undersigned recommends a finding that the

hourly rates requested for plaintiffs' attorneys and the numbers of hours billed by plaintiffs'

attorneys are reasonable.

Accordingly, the undersigned recommends a finding that plaintiffs be awarded

$17,999.38 in fees and $402.00 in costs.

### Conclusion

For these reasons, the undersigned recommends that judgment be entered in favor of

plaintiff InertialWave against defendants SP Global, Tolley, and Burns in the amount of

$704,190.26 ($661,192.11 in compensatory damages + $16,998.15 in pre-judgment interest

through the date of the arbitration + $16,500.00 in attorneys' fees for the arbitration + $9,500.00

in arbitration costs).  The undersigned further recommends that judgment be entered in favor of

plaintiff Intelesense against defendants SP Global, Tolley, and Burns in the amount of

$1,155,981.64 ($1,123,151.14 in compensatory damages + $20,330.50 in attorneys' fees for the

arbitration + $12,500.00 in arbitration costs).  Lastly, the undersigned recommends that judgment be entered in favor of plaintiffs jointly against defendants SP Global, Tolley, and Burns in the amount of $17,999.38 in attorneys' fees and $402.00 in costs.

### Notice

By means of the court's electronic filing system and by mailing a copy of this proposed findings of fact and recommendations to Tom Burns at 8849 Brown Thrasher Ct., Gainesville, VA 20155; Dan Tolley at 16545 Chestnut Overlook Drive, Purcellville, VA 20132; SP Global, Inc. c/o Registered Agent, 16545 Chestnut Overlook Drive, Purcellville, VA 20132; and SPG Institute, Inc. c/o Registered Agent, 16545 Chestnut Overlook Drive, Purcellville, VA 20132, the parties are notified that objections to this proposed findings of fact and recommendations must be filed within fourteen (14) days of service of this proposed findings of fact and recommendations and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

ENTERED this 31st day of May, 2023.

_____/s/_____
John F. Anderson
United States Magistrate Judge

_____
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia